William Warren HASH, Appellant,

v.

Pat HENDERSON, United States Marshal for the Eastern District of Arkansas, Appellee.

No. 18845.

United States Court of Appeals
Eighth Circuit.

Nov. 27, 1967.

William Warren Hash, pro se.

W. H. McClellan, U. S. Atty. for Eastern District of Arkansas, Little Rock, Ark., and William F. Sherman, Asst. U. S. Atty., for appellee.

Before VAN OOSTERHOUT, ME-HAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

William Warren Hash was sentenced by an Arkansas State Court, on January 14, 1962, to serve a five-year term in the State Penitentiary of Arkansas. While still confined, he was indicted and charged with theft of a letter from the United States mails, 18 U.S.C.A. § 1702. He plead guilty to the charge in the United States District Court for the Eastern District of Arkansas on October 22, 1962, and was sentenced by that court to the custody of the Attorney General for a term of three-years. In passing sentence, the court said:

> "The court recommends commitment to the Arkansas State Penitentiary so that sentence may run concurrently with the sentence said defendant is now serving in that institution."

The Attorney General, acting through the Bureau of Prisons, Department of Justice, designated the Arkansas State Penitentiary as the place of Hash's federal confinement. On March 7, 1964, the Arkansas State Parole Board paroled and released the prisoner. The United States Board of Parole took similar action on March 11, 1964.

Hash was arrested on August 5, 1964, as a state parole violator, and returned to the Arkansas State Penitentiary where his state parole was formally revoked on August 12, 1964.

On August 13, 1964, the Federal Parole Board issued a warrant charging Hash as a parole violator. It instructed the United States Marshal to place the warrant as a detainer with officials of the Arkansas State Penitentiary and to "assume custody if and when released by local authorities."

On June 10, 1966, Hash was released from the state penitentiary and turned over to the United States Marshal for for the Eastern District of Arkansas. The marshal conveyed him to the Federal Correctional Institution at Texarkana, Texas, where he was given a hearing by the Federal Parole Board on June 24, 1966. It revoked his federal parole but determined that he should be re-paroled effective August 17, 1966.

On October 25, 1966, a re-parole violator warrant for the arrest of Hash was issued by the Federal Parole Board. It was served on him November 17, 1966. He was immediately confined by the United States Marshal in Pulaski County Jail.

On December 21, 1966, while so confined, Hash petitioned the United States District Court for the Eastern District of Arkansas for a writ of habeas corpus. He alleged that he was being unlawfully confined by federal authorities as he had completed the service of his original three-year sentence during his second confinement in the Arkansas State Penitentiary from August of 1964 to June of 1966.

The District Court, after a hearing at which Hash was represented by counsel, denied his request for a writ of habeas corpus and remanded him for confinement to federal authorities. It held that his reconfinement in the Arkansas peni-

tentiary did not amount to his return to federal custody under § 4205, 18 U.S.C.A., and that such custody was not reacquired until the federal parole violator warrant was executed on June 10, 1966. Hash v. Henderson, 262 F.Supp. 1016 (E.D. Ark. 1967). We agree.

▓▓▓ Under the terms of § 4205, custody of a prisoner who has violated his parole can only be obtained by the execution of a parole violator warrant issued by the Board of Parole or a member thereof. The board is not obligated to instruct the United States Marshal to serve the warrant at the time of issuance, Maples v. United States, 360 F.2d 155 (8th Cir. 1966); Avellino v. United States, 330 F.2d 490 (2d Cir. 1964); Melton v. Taylor, 276 F.2d 913 (10th Cir. 1960), nor is it unreasonable for it to delay taking custody of a prisoner until after he is released from a state penitentiary. Teague v. Looney, 268 F.2d 506 (10th Cir. 1959); Nave v. Bell, 180 F.2d 198 (6th Cir. 1950); Stockton v. Massey, 34 F.2d 96 (4th Cir. 1929). Cf., Saylor v. United States Board of Parole, 120 U.S.App.D.C. 206, 345 F.2d 100 (1965).

The appellant also contends that time served in the state prison after being reconfined as a state parole violator should count as time served under his federal sentence.

We do not agree.

▓▓▓ It is established that if a federal prisoner on parole commits a second federal offense for which he is convicted and sentenced, that imprisonment under the second offense in a federal prison does not count as time served as part of his original sentence. Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938). The same rule applies if a federal parolee is convicted and sentenced for a state offense and is confined in a state penitentiary for such offense. Taylor v. United States Marshal for Eastern Dist. of Okl., 352 F.2d 232 (10th Cir. 1965); Letellier v. Taylor, 348 F.2d 893 (10th Cir. 1965); Morneau v. United States Board of Parole, 231 F.2d 829 (8th Cir. 1956), cert. denied, 351 U.S. 972, 76 S.Ct. 1037, 100 L.Ed. 1490; Jenkins v. Madigan, 211 F.2d 904 (7th Cir. 1954). In either event, a prisoner can be required to complete the service of his original federal sentence after completing the service for the second offense.

While the facts of *Zerbst, Taylor, Letellier* and *Morneau* can be distinguished from those here, the same principles control our decision.

The second confinement of Hash in the Arkansas State Penitentiary was as a state parole violator. For the time served under this confinement to count as time served under the original sentence, two actions would have been required: (1) a revocation of Hash's federal parole, and (2) a redesignation of the Arkansas State Penitentiary as the prison in which the remainder of the original sentence could be served. Neither step was taken.

The appellant further urges that the Attorney General was without power to change the original sentence imposed by the United States District Court, and that as the court had provided that the sentence was to be served concurrently with the state sentence in the Arkansas State Penitentiary, he completed the sentence by serving three years in the state prison.

We find no substance to this argument.

▓▓▓ The Attorney General of the United States is given the right to designate where a sentence shall be served. 18 U.S.C.A. § 4082(a). Thus, the recommendation of the District Court that Hash's original sentence run concurrently with the state sentence then being served in a state prison was surplusage and could have been disregarded by the Attorney General. Hamilton v. Salter, 361 F.2d 579 (4th Cir. 1966); Bateman v. United States, 277 F.2d 65 (8th Cir. 1960); Montos v. United States, 261 F.2d 39 (7th Cir. 1958); Bowen v. United States, 174 F.2d 323 (10th Cir. 1949); Cook v. United States, 171 F.2d 567 (1st

Cir. 1948), cert. denied, 336 U.S. 926, 69 S.Ct. 647, 93 L.Ed. 1088 (1949).

The fact that the Attorney General chose initially to accept the court's recommendation did not commit him to allow the prisoner, whatsoever the circumstances, to serve the full sentence concurrently. See, Rayborn v. Swope, 215 F.2d 604 (9th Cir. 1954); Banghart v. Swope, 175 F.2d 442 (9th Cir. 1949). Nor can it be inferred that he consented to the unexpired portion of the federal sentence being served concurrently with the state sentence by his failure to revoke his original designation. He was not obliged to designate where the prisoner should be confined for the balance of his federal sentence until he reacquired custody of him and a redesignation became necessary. Cf., McKinney v. Taylor, 358 F.2d 689 (10th Cir. 1966).

We have considered the other arguments raised by the appellant and find them to be without merit.

Affirmed.